UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cr-340-MOC-DSC-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ADAM LAWRENCE RANDOLPH, IV, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 46). The Government has responded in opposition to the motion.

I. BACKGROUND

Defendant Adam Lawrence Randolph IV seeks compassionate release under a pro se motion to modify and reduce his sentence due to the existence of "extraordinary and compelling reasons" involving his current physical health and the risk of future irreparable harm due to the Bureau of Prisons' ("BOP") alleged failure to provide immediate medical care.

On July 9, 2019, this Court sentenced Defendant to 228 months of imprisonment following his guilty pleas to Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine Base and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. No. 38). Defendant is serving this sentence at FCI Danbury in Connecticut. According to BOP records, as of February 7, 2022, Defendant has served three years, five months, and three days, which BOP officials calculate as only 21.1% of his anticipated statutory term of imprisonment. (Gov. Ex. 2 at 4). Defendant's projected release date with full good time credit is November 14, 2034.

1

On July 17, 2020, Defendant filed his first pro se motion for compassionate release. (Doc. No. 44). Defendant sought release based on the COVID-19 pandemic and his purported hip ailment. (Id.). This Court denied Defendant's motion on August 10, 2020, for failure to exhaust his administrative remedies. (Doc. No. 45).

Defendant filed a second pro se motion on January 20, 2022. (Doc. No. 46). In an attachment to his second motion, Defendant included a copy of his written request for compassionate relief sent to the Warden at FCI Danbury on October 10, 2021. (Id. at 8). Defendant alleges he never received a response from the Warden or any BOP officials.[1] (Id. at 3). On January 31, 2022, the Court ordered the Government to respond. (Doc. No. 47). The Government filed its response in opposition on February 14, 2022. (Doc. No. 49).

## II. DISCUSSION

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of

---

[1] Because Defendant filed the pending motion after passage of thirty days from the presentation of Defendant's request to the Warden, he has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

2

Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282, fn.7. As the movant, Defendant still bears the burden of establishing that he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Defendant's second motion for compassionate release argues that he needs a total hip replacement and that the BOP has made it clear that no such surgery will take place while Defendant is serving out his sentence. (Doc. No. 46 at 5). He claims that, without hip replacement surgery, he will continue to suffer and be rendered physically incapacitated due to the BOP's inaction. (Id.).

Compassionate release based on a medical condition is limited and rare. Defendant must be able to demonstrate that he is suffering from a terminal illness or some form of serious physical or mental illness or impairment, including 'deteriorating physical or mental health because of the aging process,' which diminishes his ability to provide self-care in prison and from which there is no expectation of recovery. United States v. Polnitz, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). Chronic conditions that can be managed while in prison are not a

3

sufficient basis for compassionate release. United States v. Ayon-Nunez, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).

Here, Defendant alleges that before his arrest in this case, he began to experience mild-to-moderate difficulties with some physical motions and that discomfort elevated to severe pain after his arrest, which began to affect his ability to walk and move around. (Doc. No. 46 at 2). However, in the Presentence Investigation Report prepared after his arrest but before Defendant's sentencing, he reported his physical condition to be good and reported his only issue at the time to be an abscess in a tooth. (Doc. No. 28, PSR p. 91).

Defendant now claims that after over one year of complaints about his condition, specialists examined him in September of 2021 and determined he needs a total hip replacement. (Doc. No. 46 at 2). Defendant alleges that, since that recommendation, the BOP has elected to simply medicate his condition, as opposed to setting up an immediate and emergent hip replacement. (Id.). He believes that medication and treatment, without major surgery, will result in his inability to walk for the rest of his life. (Id.). His motion asserts that his current condition makes it difficult to move around and that the medication prescribed is not sufficiently easing his pain. (Id. at 3).

An examination of the Defendant's medical records confirms that medical professionals with the BOP are aware of Defendant's condition and have been providing consistent treatment throughout his confinement. (Gov. Ex. No. 1). In addition to treating Defendant with pain medicine, BOP officials have also provided Defendant with braces for his legs, compression garments, medical shoes, and a cane. (Id. at 69). He has also been accommodated with a lower bunk in his cell to allow for his movement difficulties. (Id. at 61). The BOP performed an MRI in June of 2021 and followed up with x-rays in September when a specialist recommended total

4

right hip arthroplasty due to severe bone on bone arthritis. (Id. at 1). In fact, Defendant's medical records indicate that he had an appointment with a medical provider on February 2, 2022, and that he has been referred for an urgent ortho evaluation, with an appointment pending. (Id.). There is no evidence to suggest the BOP has disregarded Defendant's chronic conditions. Defendant's medical records indicate instead that he has been consistently treated for his physical issues and that such treatment is ongoing. Nowhere in Defendant's medical records are there any suggestions that his need for a hip replacement has been denied by the BOP and might not take place in the future. Furthermore, there is no evidence to suggest that the BOP's current treatment of Defendant with pain medication and other alleviating methods will result in him losing his ability to walk.

Defendant therefore fails to identify any extraordinary and compelling reasons to modify his sentence. His discomfort is unfortunate, but he is currently being provided with sufficient and ongoing treatment and the BOP houses many inmates who have no ability to walk and other difficulties with physical movement with no issues. White v. United States, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (noting that it is not unusual for inmates to have moderate to severe health issues while incarcerated and the BOP is well-versed in providing an adequate level of care for individuals in need).

In addition to being unable to demonstrate extraordinary and compelling reasons for this request, the § 3553(a) factors continue to demand a sentence well beyond the time Defendant has served to this point. Defendant seeks immediate release, despite having served only a few years of his nineteen-year sentence. Defendant's crimes were extremely serious. He actively participated in a drug-trafficking conspiracy that lasted for about three years. During that participation, he was known to possess firearms. The sentence imposed by this Court was

sufficient, but not greater than necessary, to reflect the seriousness of Defendant's criminal conduct, afford adequate deterrence to criminal conduct, and protect the public from further crimes by Defendant.

Moreover, before the incident offenses, Defendant accumulated a lengthy criminal record. In addition to various assorted misdemeanors, Defendant has prior felony convictions that include Possession with Intent to Sell and Deliver Schedule II Controlled Substance, Sale and Deliver of a Schedule II Controlled Substance, and Possession with Intent to Sell and Deliver Cocaine from 2007, Possession with Intent to Sell and Deliver Cocaine from 2009, Possession of Cocaine and Maintaining a Dwelling Place from 2012, and four separate convictions of Possession with Intent to Sell and Deliver Cocaine from 2013. (Doc. No. 28, PSR p. 43–59). A review of Defendant's criminal history supports that he has engaged in criminal conduct similar to the drug activity that resulted in his current sentence, for a period of about fifteen years.

Defendant offers neither specific evidence nor argument regarding the relevant sentencing factors. His only argument for a reduction of his sentence to time-served, absent his argument concerning his physical condition, is that he demonstrated "an extraordinary acceptance of responsibility which the Court had not considered at the time of sentencing." (Doc. No. 46 at 5). The Court and the Government did consider Defendant's acceptance of responsibility at the time of sentencing, as his offense level was reduced by three levels per U.S.S.G. 3E1.1(a) and (b). (Doc. No. 16 at 2–3). Furthermore, the Court granted Defendant a variance below the guideline range in Count One. (Doc. No. 39 at 3). Section 3553(a) therefore counsels the same sentence today that this Court imposed in 2019. For all these reasons, Defendant's motion is denied.

6

Case 3:18-cr-00340-MOC-DSC    Document 52    Filed 03/17/22    Page 6 of 7

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 46), is **DENIED**.

Signed: March 17, 2022

Max O. Cogburn Jr
United States District Judge